UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

FILED
NOV 30 2017
U.S. CLERK'S OFFICE
EVANSVILLE, INDIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO. 4:17-cr-23 - SEB-VTW |
| CLIFTON JONES, | ) | -01 |
| GREGORY CHURCHILL, | ) | -02 |
| BILLY DALE SEARS, | ) | -03 |
| HARRY EDELEN, | ) | -04 |
| STANLEY DUKE, JR., | ) | -05 |
| ROGER CARROLL, JR., | ) | -06 |
| and | | |
| CHAD ALBERTSON, | ) | -07 |
| Defendants. | ) | |

**INDICTMENT**

**Count One**

[21 U.S.C. § 846 – Conspiracy to Distribute Methamphetamine]

The Grand Jury charges that:

Beginning in or about, January 1, 2017, and continuing up to and through November 28, 2017, in the Southern District of Indiana, New Albany Division, and elsewhere, CLIFTON JONES, GREGORY CHURCHILL, BILLY DALE SEARS, HARRY EDELEN, STANLEY DUKE, JR., ROGER CARROLL, JR., and CHAD ALBERTSON, defendants, did knowingly conspire together and with diverse other persons, known and unknown to the Grand Jury, to possess with the intent to distribute and to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine, a Schedule II Non-Narcotic Controlled

Substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846.

## MANNER AND MEANS

1. BILLY DALE SEARS ("SEARS") was a leader and supervisor of the conspiracy to distribute and possess with the intent to distribute methamphetamine. SEARS would obtain large quantities of methamphetamine from his sources of supply CLIFTON JONES ("JONES") and GREGORY CHURCHILL ("CHURCHILL").

2. After acquiring the methamphetamine, SEARS and JONES would then distribute the methamphetamine in the southwestern Indiana and northern Kentucky area to mid-level distributors. Mid-level distributors within the organization included HARRY EDELEN ("EDELEN"), STANLEY DUKE, JR. ("DUKE"), ROGER CARROLL, JR. ("CARROLL"), and CHAD ALBERTSON ("ALBERTSON"). Mid-level distributors would then distribute the methamphetamine to low-level distributors.

4. Throughout the conspiracy, several members of the conspiracy distributed the methamphetamine on a "front," wherein they provided quantities of methamphetamine on consignment to other methamphetamine distributors, receiving payment for the consigned methamphetamine after its sale by the other distributors.

5. The defendants used telephones to facilitate the methamphetamine trafficking operation outlined herein. During the course of the conspiracy, the defendants spoke on telephones, at times, using code language, and used text messages to discuss matters relative to their methamphetamine trafficking operation.

6. The defendants used motor vehicles to transport methamphetamine and United

States currency constituting the proceeds of the sale of methamphetamine to and from the Southern Indiana area.

7. During the course of the conspiracy, members of the conspiracy possessed firearms. Firearms are a "tool of the trade" for drug traffickers, as they are utilized to safeguard narcotics, United States currency, and the physical well-being of the narcotics trafficker from rival traffickers.

8. Members of the conspiracy maintained sizeable amounts of cash to obtain quantities of methamphetamine or to pay for methamphetamine previously provided on consignment.

9. Various residences and properties were used by the defendants to store methamphetamine and United States currency generated from the sale and distribution of methamphetamine, and from which to distribute and receive payment for the methamphetamine during the course of the conspiracy. Among the locations used were properties located at 1731 South Audubon Drive, New Albany, Indiana; 1009 Brunswick Drive, Jeffersonville, Indiana; 1528 Corydon Pike, New Albany, Indiana; 2019 Maryland Avenue, New Albany, Indiana; 2030 Rowan Street, Louisville, Kentucky; 3116 Fordaven Road, Apartment 3, Louisville, Kentucky; and 1546 Prentice Street, Louisville, Kentucky.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, that is to possess with the intent to distribute and to distribute methamphetamine, the members of the conspiracy did commit, among others, the following overt acts:

1. On or about January 24, 2017, CARROLL distributed approximately 5 grams of crystal methamphetamine to an individual known to the Grand Jury in New Albany, Indiana.

2. On or about February 3, 2017, CARROLL distributed approximately 7 grams of crystal methamphetamine to an individual known to the Grand Jury in New Albany, Indiana.

3. On or about February 16, 2017, CARROLL distributed approximately 7 grams of crystal methamphetamine to an individual known to the Grand Jury in New Albany, Indiana.

4. On or about February 23, 2017 CARROLL possessed approximately 1 gram of crystal methamphetamine at his residence in New Albany, Indiana.

5. On or about February 24, 2017, SEARS distributed approximately 10 grams of crystal methamphetamine to an individual known to the Grand Jury in Louisville, Kentucky knowing the crystal methamphetamine would be redistributed in Southern Indiana.

6. On or about April 7, 2017, SEARS had an individual known to the Grand Jury accompany him to Louisville, Kentucky so SEARS could obtain approximately 3 ounces of crystal methamphetamine. SEARS then distributed the crystal methamphetamine to the individual known to the Grand Jury knowing it would be redistributed in Southern Indiana.

7. On or about May 16, 2017, SEARS instructed an individual known to the Grand Jury to travel from Indiana and meet him in Louisville, Kentucky to obtain approximately 3 ounces of crystal methamphetamine. SEARS obtained the crystal methamphetamine from CHRUCHILL and distributed it to the individual known to the Grand Jury knowing it would be redistributed in Southern Indiana.

8. On or about June 7, 2017, an individual known to the Grand Jury met SEARS at his residence in New Albany. Both SEARS and the individual traveled to Louisville,

Kentucky wherein SEARS obtained approximately 4 ounces of crystal methamphetamine and distributed it to the individual knowing it would be redistributed in Southern Indiana.

9. On or about June 29, 2017, EDELEN possessed approximately 16 ounces of crystal methamphetamine in New Albany, Indiana. SEARS had just supplied the crystal methamphetamine to EDELEN. EDELEN was arrested for possession of methamphetamine and detained.

10. On or about July 1, 2017, EDELEN called his girlfriend and asked her to distribute the remaining ounces of crystal methamphetamine he still possessed. EDELEN further instructed his girlfriend to call SEARS and get advice on what EDELEN should do regarding his arrest for possession of methamphetamine.

11. On or about September 20, 2017, SEARS called JONES to arrange the purchase of approximately 1 pound of crystal methamphetamine.

12. On or about September 28, 2017, SEARS distributed approximately 7 grams of crystal methamphetamine to ALBERTSON in New Albany, Indiana.

13. On or about September 29, 2017, SEARS distributed approximately 14 grams of crystal methamphetamine to ALBERTSON in New Albany, Indiana.

14. On or about October 4, 2017, SEARS distributed approximately 7 grams of crystal methamphetamine to ALBERTSON in Salem, Indiana.

15. On or about October 5, 2017, DUKE distributed approximately 6 grams of crystal methamphetamine to SEARS in New Albany, Indiana. Later that day, DUKE called SEARS and SEARS acknowledged he had half the money owed to DUKE for the previously fronted crystal methamphetamine.

16. On or about October 5, 2017, SEARS and ALBERTSON had a phone conversation wherein ALBERSTON requested SEARS provided him with an ounce of crystal methamphetamine. In that same conversation, SEARS asked Albertson if he had money owed to SEARS for previously fronted crystal methamphetamine. ALBERTSON informed SEARS he would be selling the last of his crystal methamphetamine and would have money ready to pay back SEARS. SEARS agreed to wait to collect ALBERTSON's money until the next time he fronted methamphetamine to ALBERTSON. Both SEARS and ALBERTSON agreed to pool their money together to purchase more crystal methamphetamine.

17. On or about October 6, 2017, DUKE called SEARS and SEARS informed DUKE he had money ready for DUKE for previously fronted crystal methamphetamine. SEARS and DUKE agreed to meet in New Albany, Indiana for the money exchange.

18. On or about October 15, 2017, CHURCHILL distributed approximately 2 ounces of crystal methamphetamine to SEARS in Louisville, Kentucky with intended redistribution in Southern Indiana.

19. On or about October 15, 2017, JONES called SEARS and inquired about money owed to JONES for crystal methamphetamine previously fronted to SEARS.

20. On or about October 16, 2017, JONES distributed approximately 4 ounces of crystal methamphetamine to SEARS in Louisville, Kentucky with intended redistribution in Southern Indiana.

21. On or about October 19, 2017, DUKE called JONES from Southern Indiana and ordered ½ ounce of crystal methamphetamine from JONES for distribution.

22.     On or about October 16, 2017, JONES distributed approximately 4 ounces of crystal methamphetamine to SEARS in Louisville, Kentucky with intended redistribution in Southern Indiana.

23.     On or about November 2, 2017, JONES distributed approximately 3 ounces of crystal methamphetamine to SEARS in Louisville, Kentucky with intended redistribution in Southern Indiana.

24.     On or about November 8, 2017, JONES distributed approximately 3 ounces of crystal methamphetamine in Louisville, Kentucky with intended redistribution in Southern Indiana.

**Count Two**

[Possession of a Firearm by a Convicted Felon-18 U.S.C. § 922(g)(1)]

The Grand Jury further charges that:

On or about October 24, 2017, in Clark County, in the Southern District of Indiana, STANLEY DUKE, JR., defendant herein, did knowingly possess in commerce and affecting commerce a firearm and ammunition, to wit:    a single-shot Leinad .45/.410 caliber handgun, bearing serial number K00011702, after having been convicted of one or more crimes punishable by a term of imprisonment exceeding one (1) year, to wit: a felony Receiving Stolen Property in Clark County, Indiana under Cause number 10D03-0412-FD-000833 on or about May 15, 2007; a felony Felon in Possession of a Firearm and Possession of Cocaine in Jefferson County, Kentucky under cause number 05-CR-001643 on or about May 15, 2007, and a felony

Possession of Cocaine in Jefferson County, Kentucky under Cause number 07-CR-000400-001 on or about May 15, 2007;

All of which is in violation of Title 18, United States Code, Section 922(g)(1).

## FORFEITURE

1.  Pursuant to Federal Rule of Criminal Procedure 32.2, the United States hereby gives the defendants notice that the United States will seek forfeiture of property, criminally and/or civilly, pursuant to Title 18, United States Code, Sections 924(d), Title 21, United States Code, Sections 853 and 881, and Title 28, United States Code, Section 2461(c), as part of any sentence imposed.

2.  Pursuant to Title 18, United States Code, Section 924(d), if convicted of the offense set forth in Count 2 of this Indictment, Stanley Duke, Jr. shall forfeit to the United States "any firearm or ammunition involved in" the offense.

3.  Pursuant to Title 21, United States Code, Section 853, if convicted of the offense set forth in Count 1 of the Indictment, the defendants shall forfeit to the United States any and all property constituting or derived from any proceeds the defendants obtained directly or indirectly as a result of the offense, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the offense.

4.  The property subject to forfeiture includes, but is not necessarily limited to, the following:

    a.  a single-shot Leinad .45/.410 caliber handgun, bearing serial number K00011702.

5. The United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), and as incorporated by Title 28, United States Code, Section 2461(c), if any of the property described above in paragraph 4, as a result of any act or omission of the defendant:

 a. cannot be located upon the exercise of due diligence;

 b. has been transferred or sold to, or deposited with, a third party;

 c. has been placed beyond the jurisdiction of the court;

 d. has been substantially diminished in value; or

 e. has been commingled with other property which cannot be divided without difficulty.

6. In addition, the United States may seek civil forfeiture of the property described above in paragraph 4 pursuant to Title 18, United States Code, Section 924(d), Title 21, United States Code, Section 881(a), and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

FOREPERSON

JOSH J. MINKLER
United States Attorney

By: _____
Lauren Wheatley
Assistant United States Attorney